# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

BRIAN O. LIPSCOMB,        :
                           :

      Plaintiff,       :
                           :

v.                       :   CIVIL ACTION NO.
                           :   2:11-CV-78-RWS

STEVEN D. CRONIC, *et al.*,   :
      Defendants.    :
                           :

## <u>ORDER</u>

This case comes before the Court on: Defendants Alexis E.L. Chase, L.

Fountain, P. Hightower, Sharon Lewis, Thomas Sittnick, and Jacqueline L.

Smallwood ("State Defendants")'s Motion to Dismiss [11]; Defendants Officer

Ashley, Mark Bandy, Steven D. Cronic, Diane Ellis, Officer Lundis, Sargent

Moore, Officer Sanders, Lieutenant Seymore, Officer Sturgill, and Sargent

Underwood ("Hall County Defendants")'s Motion to Dismiss Plaintiff's

Complaint [26]; the Hall County Defendants' Motion to Dismiss Plaintiff's

Amended Complaint [31]; the State Defendants' Motion to Strike the Amended

Complaint, or in the Alternative, Motion to Dismiss Plaintiff's Amended

Complaint [33]; Plaintiff's Motion to Amend his Complaint [39]; Defendant

Kassie Hulsey's Motion to Dismiss [47]; and Defendant Jody Yger's Motion to Dismiss [61]. After a review of the record, the Court enters the following order.

A. Factual Background[1]

Plaintiff Brian Lipscomb pleaded guilty to aggravated stalking on January 5, 2009 and was committed to the Department of Corrections who incarcerated him at the Hall County Jail. By March 24, 2009, all the Hall County Defendants knew that he suffered from epileptic seizures and that he required "significant medical attention." On March 25 and 26, 2009, Plaintiff suffered epileptic seizures and was seen by Dr. Linwood Zoller, the attending physician at Hall County Jail.

On March 27, 2009, despite the fact that Plaintiff still needed medical attention, Defendant Jody Yger sent Plaintiff back to his cell because she "needed the bed space." In returning to his cell, Plaintiff was too weak to walk and asked to use a wheelchair. However, Defendants Underwood and Moore

---

[1]The following facts are taken from the Amended Complaint and any appended Exhibits.

refused the request and ordered Defendants Llanas[2] and Sanders to drag him by his arms to his cell.

At 10:45am on March 27, 2009, Plaintiff suffered another seizure and began vomiting. Defendants Yger and Hulsey, LPNs, were called and gave Plaintiff nausea medication. While Plaintiff "obviously required a doctor's attention and care," Hulsey and Yger did not call the doctor or move him to the infirmary and allowed him to remain on the floor in his own excrement and urine. No other defendant moved him from the floor either.

Rather, Defendant Sturgill allowed another inmate to carry the Plaintiff to the day room and sit him at a table. That evening, when Plaintiff was supposed to return to his cell, Defendants Sturgill, Ashley, and "Officer W" demanded that the Plaintiff walk to his cell. Plaintiff replied that he was unable to do so due to illness. In response, Sturgill then pulled the Plaintiff by his left arm, twisted it behind his back, and pushed the Plaintiff to the floor. This action chipped and split two of Plaintiff's teeth and caused him to black out. When he awoke, Plaintiff was handcuffed with his hands behind his back and Officer W was on top of him. Defendant Sturgill then picked Plaintiff up by the handcuffs

---

[2]Plaintiff has plead that Defendant "Lundis" completed this action but all parties now agree that Plaintiff misplead "Lundis" for Llanas.

AO 72A
(Rev.8/82)

and brought his arms forward over his head. This action severely twisted Plaintiff's shoulders and dislocated his right shoulder. Sturgill continued to carry the Plaintiff by the handcuffs to his cell and Ashley carried the Plaintiff by the right leg.

Following this incident, the Plaintiff was taken to the infirmary but did not see a doctor for three or four days. When Dr. Zoller finally saw the Plaintiff, he adjusted his seizure medications and ordered an X-ray. That X-ray was normal but Dr. Zoller ordered Defedants Yger and Ellis to provide Plaintiff with a sling. They intentionally failed to do so. Dr. Zoller also asked Ellis why he had not been called sooner and ordered her to make an appointment with an orthopedist and for an MRI. She did neither.

On April 19, 2009, after the Plaintiff had made numerous grievances regarding his lack of proper medical attention, Defendant Seymore suggested that the Plaintiff file an additional Inmate Request Form for treatment and also told Ellis that the Plaintiff's shoulder needed attention. On April 21st, Dr. Zoller saw the Plaintiff again, diagnosed him with a dislocated shoulder, ordered another x-ray and an MRI, and wrote on Plaintiff's chart that he "will need reconstructive surgery of R shoulder." The next day Plaintiff received x-rays

4

and an MRI which revealed, *inter alia*, a "[s]ubtle rim-rent tear involving anterior leading edge of supraspinatus tendon."

After Plaintiff filed another Inmate Request Form, Dr. Zoller ordered that Plaintiff see an orthopedic surgeon on April 26, 2009. While he was awaiting his appointment, Plaintiff was first told by Ellis that Hall County would pay for his surgery by reimbursement only. But on May 4, 2009, he was told that if he were released the next day he should report to Specialty Clinics of Georgia - Orthopaedics, P.C. and that Hall County would pay for his surgery directly. However, Plaintiff was not released on May 5th as his good-time credits were revoked for complaining about his medical treatment, *inter alia*.

On May 7, 2009, Plaintiff was taken to Dr. Robert Marascalco who confirmed that Plaintiff had an acute disclocation of the right shoulder and residual laxity with anterior and inferior subluxation secondary to muscle disuse. He stated that once Plaintiff's shoulder was strengthened through physical therapy he "will be a candidate for reconstruction of the shoulder." He also told the Plaintiff that if the nerve in his shoulder died, amputation of his arm would be "inevitable." Following this news, Plaintiff filed a motion in the

Superior Court to reinstate his good-time credits because he needed appropriate medical care which he was not receiving through Hall County.

On May 11, 2009, Plaintiff's cell was flooded because the inmate above him had purposely stopped up his toilet. Plaintiff rang his emergency button and Defendant Ashley repeatedly responded that he should stop mashing the f-ing button. Plaintiff then decided that he would purposely flood his own cell to get help and attempted to throw his shoe at the sprinkler head in his cell but, in the process, slipped and fell on the floor. Plaintiff laid in the floor until found by Sturgill on rounds who then called the infirmary. At the infirmary he was seen by an unidentified nurse who did not provide him medical treatment for his arm and leg pain.

On May 19, 2009, during physical therapy, Plaintiff lost all sensation in his right arm when a ligament snapped. When he returned from physical therapy, Defendant Bandy met him and told him that he would be transferring him to the State system because he was causing a nuisance. Defendants Sturgill and Ashley then took him to get a fresh jumpsuit and in the process forcibly stripped the Plaintiff naked while an unidentified female officer videotaped the occurrence.

AO 72A
(Rev.8/82)

On May 20, 2009, in response to the physical therapy session, Defendant Ellis called Dr. Marascalco to discuss whether Plaintiff should see a neurologist. Dr. Marascalco told Ellis to refer him to a nuerologist and to discuss the issue with Dr. Zoller. Ellis also scheduled a follow-up appointment with Dr. Marascalco for June 4th.

On May 22, 2009, Plaintiff lost all sensation on his right side. The same day, Dr. Marascalco called Ellis about the Plaintiff and Ellis told Marascalco that the Plaintiff was being sent to the State prison and the State would follow-up on the neurologist and additional care. As a result, Dr. Marascalco cancelled Plaintiff's June 4th appointment. On May 26th, 2009, the day after Memorial Day, Defendants Cronic and Bandy transferred the Plaintiff to the State so that they would not have to pay for Plaintiff's continuing treatment.

On June 2, 2009, Plaintiff was first seen by a physician's assistant at Georgia Diagnostic and Classification Center who requested that Defendant Jacqueline Smallwood send the Plaintiff to an orthopedist at Augusta State Medical Prison (ASMP). She did so and scheduled the appointment for June 30, 2009.

In the interim, Plaintiff was transferred to Bostick State Prison and was seen by Dr. Harden. Dr. Harden additionally ordered the Plaintiff to be seen at ASMP by an orthopedist and a neurologist.

Plaintiff was never taken to ASMP for his June 30th appointment and instead, for "unexplained reasons," was finally taken to ASMP two weeks later on July 16, 2009. The ASMP orthopedist told Plaintiff that this was another case where the County was trying to make the State pay for his injuries, and said that he would "fix them" and ordered that the Plaintiff follow-up with Dr. Marascalco regarding his shoulder. However, Defendant Smallwood never approved that referral in contravention of the orthopedist's orders. As well, Plaintiff saw a neurologist who ordered EMG tests but Smallwood did not make the requested EMG appointments.

On July 27, 2009, Plaintiff was again referred for EMG studies but no one acted on this recommendation until August 5, 2009 when Smallwood scheduled the appointment for October 23, 2009–over two months later. On August 17, 2009, Plaintiff was told that no funds had been allocated for his surgery. Plaintiff alleges that Defendants Lewis, Sittnick, Smallwood, Chase,

and Fountain individually refused to approve the surgical request to save the State money.

On August 18, 2009, the Plaintiff filed an internal grievance form for medical treatment which was denied by Defendant Fountain, his counselor, and Defendant Hightower, his grievance counselor, because he was under medical care. On August 24, 2009, Dr. Dalrymple ordered that he see Dr. Marascalco again but that referral was never approved. On August 31, 2009, Plaintiff again saw Dr. Dalrymple who said that he did not have approval for his surgery and that that approval had to come from the Department of Corrections' Utilization Management in Atlanta.

On September 1, 2009, Plaintiff filed a formal grievance regarding his medical care. This was again denied by Fountain, Chase, and Hightower on October 2, 2009 because he was under medical care from Dr. Dalrymple.

On September 15, 2009, Plaintiff saw Dr. Harden who again told him that he had done all he could and that his surgery was up to Utilization Management. On September 30, 2009, Plaintiff finally received a hearing on his motion to modify his sentence and that motion was granted. Plaintiff was then

released on October 2, 2009. As a result of this incident and this surgery denial,

Plaintiff is now permanently partially-disabled and cannot afford his treatment.

Plaintiff filed suit against the Hall County Defendants, State Defendants,

Hulsey, and Yger, asserting civil rights violations and corresponding state-law

claims. The Defendants now move to dismiss all of Plaintiff's claims.

**B. Discussion**

### 1. Motion to Amend and Motion to Strike the Amended Complaint

The State Defendants first move to strike the Plaintiff's Amended

Complaint because, as to them, the Amended Complaint was not timely filed

and Plaintiff did not seek permission prior to filing.[3]  Moreover, they argue that

the Amended Complaint is futile. Dkt. No. [25]. Since that motion, the Plaintiff

has officially moved to amend his complaint as to those Defendants. Dkt. No.

[39].

Federal Rule of Civil Procedure Rule 15 states:

(1) **Amending as a Matter of Course**. A party may amend its
pleading once as a matter of course within:

---

[3]The Court notes that the County Defendants concede that the Amended
Complaint is proper as to them. Dkt. No. [31-1] at 1 n.1. Therefore, their original Motion
to Dismiss [26] is **MOOT**.

10

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) **Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. . .

FED. R. CIV. P. 15. Federal Rule 15 further provides, "leave shall be freely given when justice so requires." Id. Even so, granting leave to amend is not automatic. Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd., 79 F. 3d 480, 484 (5th Cir. 1996) ("approval of motion to amend is not automatic"); Ashe v. Corley, 992 F.2d 540, 542 (5th Cir. 1993) ("leave to amend is by no means automatic"); Faser v. Sears Roebuck & Co., 674 F.2d 856, 860 (11th Cir. 1982). Indeed, district courts have "extensive discretion" in deciding whether to grant leave to amend and may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile." Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999).

As an initial matter, Plaintiff's Amended Complaint was not timely as an amendment as a matter of right. The State Defendants filed their original Motion to Dismiss on May 27, 2011, and under Rules 15 and 6(d), Plaintiff had

11

24 days to file his Amended Complaint, or until June 20, 2011. As his Amended

Complaint was not filed until June 23, 2011, Plaintiff requires leave of court to

file his Amended Complaint.[4]

As an initial matter, the Court finds that because Plaintiff's Amended

Complaint was filed three days after the relevant deadline, the Amended

Complaint is neither prejudicial nor a delay tactic–the question is futility. Thus,

the Court will look at the merits to determine if the Plaintiff's Amended

Complaint states a claim. See Burger King Corp. v. Weaver, 169 F.3d 1310,

1315 (11th Cir. 1999) (futility is another way of saying "inadequacy as a matter

of law"). If Plaintiff cannot state a claim under the more-detailed Amended

Complaint, his claims under the original Complaint will also warrant dismissal.

---

[4]Plaintiff relies on Williams v. Board of Regents of University System of Georgia, 477 F.3d 1282 (11th Cir. 2007) for the proposition that he is permitted to amend as a matter of right as to all Defendants so long as one Defendant has not answered or otherwise filed a responsive pleading. However, Williams specifically states "[i]f the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer." Id. at 1291 (emphasis added). As the State Defendants had already answered, the Plaintiff still had to satisfy the 24-day amendment period as to those Defendants to avoid requiring permission.

AO 72A
(Rev.8/82)

<u>a. Motion to Dismiss Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. <u>Id.</u>

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by

13

mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### b. Inadequate Medical-Treatment Claim

### i. Legal Standard

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995). Here, Plaintiff has alleged that the State Defendants have violated his Eighth Amendment rights by failing to provide adequate medical care.

"[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001).[5] In order

---

[5]While the applied standard is the same under both the Eighth and Fourteenth Amendments, because Plaintiff was in custody at the time of both the alleged indifference and excessive force, any claim under the Fourteenth Amendment is improper and is **DISMISSED**. See Whitley v. Albers, 475 U.S. 312, 327 (1986) (finding that a convicted prisoner's excessive-force remedy is the Eighth Amendment, not the Fourteenth); Hamm

AO 72A
(Rev.8/82)

survive on an inadequate medical treatment claim, Plaintiffs must show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotations omitted). Alternatively, a serious medical need can be determined by "whether a delay in treating the need worsens the condition." Id. "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." Id. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986).

A plaintiff may establish a prison official's deliberate indifference by showing that the official failed or refused to provide care for a serious medical condition, delayed care "even for a period of hours," chose "an easier but less

v. DeKalb Cnty., 774 F.2d 1567, 1572 (11th Cir. 1985) (same for deliberate indifference to medical treatment).

efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999). <u>See</u> <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994) (citation and internal quotations omitted) (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain") (overruled in part on other grounds by <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 n.9 (2002) (discussing qualified immunity)).

ii. Defendants Lewis, Sittnick, and Smallwood

Plaintiff has alleged that Defendant Dr. Sharon Lewis, the Statewide Medical Director for the Department of Corrections ("DOC"), and Defendant Thomas Sittnick, the "day-to-day" manager of the DOC's Utilization Management (the department that approved medical care), "personally approved the denial of surgery and other medical care to Plaintiff . . . " to save the DOC money. Am. Cmpl., Dkt. No. [25] at ¶¶ 19-20, 98, 102-03. As well, Plaintiff plead that Defendant Jacqueline Smallwood, the DOC employee who reviewed Plaintiff's medical consultation requests, "personally denied the necessary surgery and other necessary medical care to Plaintiff. . . ." to save the

16

DOC money. Id. at ¶¶ 21, 98, 102-03. The Defendants allege that these allegations are insufficient to support a deliberate indifference claim. However, these claims are not futile.

"A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Likewise, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal citations omitted). Here, Plaintiff has plead that an orthopedist recognized that he needed surgery. Am. Cmpl., Dkt. No. [25] at ¶ 89 (stating that an ASMP orthopedist told Plaintiff that it was not the State's responsibility to pay for his surgery).[6]

_____

[6]Defendants argue that because some of Plaintiff's Amended Complaint Exhibits do not directly order or mention his surgery, Plaintiff has not adequately plead that he needed it. For instance, Defendants point to Dr. Robert Marascalco's opinion that Plaintiff had to "recover muscle strength and muscle function" through physical therapy prior to surgery. Ex. W, Dkt. No. [25-1] at 29. Thus, they argue, Plaintiff's surgical need was speculative. However, Dr. Marascalco goes on to say that once his strength returns he "will be a candidate for surgery"–not "might be." Id. And Plaintiff also pleads that two other doctors recognized surgery was necessary without qualification. See Ex. P, Dkt. No. [25-1] at 20 ("will need reconstructive surgery of R shoulder"); Am. Cmpl., Dkt. No. [25] at ¶ 89 (stating that Plaintiff needed surgery and the State would not pay for it). As well, Plaintiff has not plead that all of his medical records are attached or that every statement is supported by the exhibits. This is not a motion for summary judgement such that any

17

And he has plead that these Defendants denied his medical care for non-medical reasons–that they wanted to save the DOC money. Moreover, there is also evidence in the record that the ASMP orthopedist ordered that Plaintiff be sent to Dr. Robert Marascalco for a follow-up appointment, and that appointment was never scheduled. Ex. WW, Dkt. No. [25-1] at 5; Am. Cmpl., Dkt. No. [25] at ¶ 90. Thus, Plaintiff has plead deliberate indifference through both denying his surgery and not following his doctor's prescribed treatment plan. Finally, Plaintiff has plead that as a result of the delay he is now "permanently partially disabled." Am. Cmpl., Dkt. No. [25] at ¶ 114. Therefore, Plaintiff has plead that Defendants showed deliberate indifference to a serious medical need that posed a risk of harm if left unattended.

Moreover, Plaintiff has plead that each of these individuals personally denied his request. Am. Cmpl., Dkt. No. [25] at ¶¶ 19-21, 98, 102-03. While Defendants argue that is a conclusory statement, whether these Defendants denied or granted his request is a factual contention which is deemed to be true at the motion to dismiss stage.

---

unsupported statement must be disregarded. Therefore, Plaintiff has adequately plead that he had a serious medical condition as a physician recognized his need for surgery.

Finally, because the Eleventh Circuit has recognized that denying a serious medical need for non-medical reasons constitutes deliberate indifference under the Eighth Amendment, Defendants Lewis, Sittnick, and Smallwood cannot receive qualified immunity at this time. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (recognizing that in order to qualify for qualified immunity, the actor must not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."); Bingham, 654 F.3d at 1176 (recognizing that denying readily-available treatment constitutes deliberate indifference).

Based on the foregoing, Plaintiff's Amended Complaint is not futile as to Defendants Lewis, Sittnick, and Smallwood. Therefore, Defendants' Motion to Strike and Dismiss the Amended Complaint [33] is **DENIED** and Plaintiff's Motion to Amend [39] is **GRANTED** as to these Defendants. These Defendants' original Motion to Dismiss [11] is thus **MOOT**.

### iii. Defendants Chase, Fountain, and Hightower

The State Defendants next move to dismiss all claims against Defendants Chase, Fountain, and Hightower. Plaintiff's claims against those Defendants are

based upon their denials of two grievances in which he asked to be seen by Dr. Marascalco. Am. Cmpl., Dkt. No. [25] at ¶¶ 99-101, 103; Ex. VV, Dkt. No. [25-2] at 21-24. Additionally, Plaintiff alleges that Defendants Chase and Fountain denied him surgery to save the State money. Am. Cmpl., Dkt. No. [25] at ¶¶ 98, 102. However, unlike the preceding State Defendants, Plaintiff has failed to state a claim against Defendants Chase, Fountain, and Hightower.

First, Plaintiff has not plausibly plead that these Defendants could even authorize Plaintiff's treatment or consultations. In fact, Plaintiff pleads the opposite–that he was told the decision to authorize additional treatment was up to "Dr. Dalrymple and Atlanta (meaning Utilization Management)," not the Bostick Prison staff. Am. Cmpl., Dkt. No. [25] at ¶ 106. As Plaintiff has not plausibly plead that these Defendants had any authority to deny his surgery or additional treatment, Plaintiff's Amended Complaint is futile as to these Defendants. Thus, Defendants Chase, Fountain, and Hightower's Motion to Dismiss [33] is **GRANTED** and Plaintiff's Motion to Amend [39] is **DENIED**. Defendants' Original Motion to Dismiss [11] is thus **MOOT**.

20

## 2. Hall County Defendants' Motion to Dismiss

### a. Inadequate Medical-Treatment Claim

The Hall County Defendants have also moved to dismiss Plaintiff's inadequate medical-treatment claim which is based upon two medical conditions: 1) epilepsy, and 2) dislocated right shoulder.

### i. Epilepsy

Plaintiff argues that the Hall County Defendants were deliberately indifferent to his epilepsy. However, Plaintiff has plead that these Defendants called the infirmary anytime Plaintiff experienced a seizure and Plaintiff did not plead that those calls were untimely. See Am. Cmpl., Dkt. No. [25] at ¶¶ 29, 31, 35, 36, 46. As Defendants are not medical personnel,[7] promptly calling the infirmary after each seizure satisfies their Eighth Amendment obligations and cannot amount to deliberate indifference. See McElligott, 182 F.3d at 1255 (stating that providing prompt medical care cannot constitute deliberate

---

[7] No epilepsy-related facts were plead about Defendant Ellis, an LPN. See Am. Cmpl., Dkt. No. [25]. In fact, out of the Hall County Defendants, the Plaintiff only plead that Defendants Sturgill, Ashley, Underwood, and Seymore were involved in epilepsy-related incidents.

indifference unless it is grossly inadequate). Therefore, any inadequate medical care claim against the Hall County Defendants predicated upon epilepsy is **DISMISSED**.

ii. Shoulder Injury

Plaintiff additionally pleads that the Hall County Defendants showed deliberate indifference when they unduly delayed treatment for his shoulder. As seen <u>supra</u>, the Court first finds that Plaintiff's shoulder injury was a serious medical need as Hall County's own doctor, Dr. Zoller, recognized that the Plaintiff would need reconstructive surgery and the outside orthopedist confirmed that diagnosis, albeit with conditions. <u>See</u> Ex. P, Dkt. No. [25-1] at 20; Ex. W, Dkt. No. [25-1] at 29. The question is whether the Hall County Defendants were deliberately indifferent to that need.

Plaintiff argues that the Defendants were deliberately indifferent to his shoulder in the following ways: 1) Defendants Ashley and Sturgill knew he was injured following the cuffing incident but did not take him to a doctor for three or four days; 2) Defendant Ellis did not provide him a shoulder sling as instructed; 3) Defendant Ellis did not make an imaging appointment as

instructed on March 31 or April 1; 4) Defendant Ellis cancelled his orthopedic follow-up appointment because he was being transferred to the State system; 5) Defendants Cronic and Bandy, four days after they learned that Plaintiff needed surgery and one week after Plaintiff's ligament snapped, transferred the Plaintiff to the State so they would not have to pay for medical services. Pl.'s Opp., Dkt. No. [38] at 14-19.

First, as to Defendant Ashley and Sturgill, Plaintiff pleads that he was taken to the infirmary after the incident. Am. Cmpl., Dkt. No. [25] at ¶ 46. But Plaintiff has not plead that Defendants Ashley and Sturgill–as prison guards–had any authority to do any more than call the infirmary. As they called the appropriate medical personnel, the Court finds that they were not deliberately indifferent to Plaintiff's medical need. See Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir. 1985) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.").

Second, the Court finds that Plaintiff has plead Defendant Ellis was deliberately indifferent to his injury. Plaintiff specifically pleads that Dr. Zoller

23

told her to provide Plaintiff with a sling[8] and to make orthopedic and imaging appointments and she did neither. See Am. Cmpl., Dkt. No. [25] at ¶¶ 49-50. As well, Plaintiff plead that as a result of this indifference and lack of treatment Plaintiff's shoulder worsened and became "severely discolored and swollen." Id. at ¶ 56. Taking Plaintiff's allegations as true, Plaintiff has sufficiently plead that Ellis disregarded Dr. Zoller's medical orders and Plaintiff suffered as a result. See Ancata, 769 F.2d at 704 (11th Cir. 1985) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment."). Defendant Ellis' Motion to Dismiss the Medical Indifference Claim based on those failures is **DENIED**.

Finally, Plaintiff has not plead a claim of deliberate indifference against Defendants Cronic and Bandy. First, Plaintiff argues in his brief that Defendant

---

[8]Defendants appear to argue that because there is a check-mark next to Dr. Zoller's sling order, the Plaintiff's allegation of indifference should not be taken as true as they infer the check-mark means that a sling was provided. See Ex. I, Dkt. No. [25-1] at 13; Hall Cnty. Def.'s Motion, Dkt. No. [31-1] at 17. However, the Court does not find that a check-mark next to the words "shoulder sling" affirmatively contradicts Plaintiff's allegation that, while Dr. Zoller ordered Ellis to provide him with a sling on March 31st or April 1st, Ellis refused to do so. See Am. Cmpl., Dkt. No. [25] at ¶ 49.

24

Bandy was "aware at least as soon as May 22, 2009 of the need for an appropriate specialist and the need for surgery." Pl.'s Br., Dkt. No. [38] at 18. Plaintiff does not address when Defendant Cronic knew about the surgical need. Regardless, Plaintiff was transferred four days after the alleged knowledge. It is simply not plausible that the Defendants could have scheduled his surgery within four days. And, even if they could have, a four-day delay for a non-emergency surgery is not deliberate indifference for Eighth Amendment purposes.

Plaintiff argues that because he has plead that Cronic and Bandy transferred him to the State so they would not have to pay for his surgery, he has mounted a claim for deliberate indifference. Specifically, he argues that Cronic and Bandy delayed his care for non-medical reasons and that this, *per se*, constitutes deliberate indifference. However, Plaintiff has plead that Defendant Bandy did not know he needed surgery until May 22nd, and four days later–three of which were Saturday, Sunday, and Memorial Day–Plaintiff was transferred. Plaintiff does not plead that the Defendants knew the State would not pay for his surgery, only that Hall County did not want to. The Court does not find that the failure to schedule surgery one business day after learning of a

non-emergency need constitutes deliberate indifference under the Eighth

Amendment. See Bingham, 654 F.3d at 1176 ("[A] defendant who delays

necessary treatment for non-medical reasons may exhibit deliberate

indifference.") (emphasis added).

In sum, Plaintiff's Eighth Amendment medical treatment denial claim is

**DISMISSED** against all Hall County Defendants except Defendant Ellis.

### b. Excessive Force

"[T]he treatment a prisoner receives in prison . . . [is] subject to scrutiny

under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994)

(citation omitted).[9] "The eighth amendment prohibition against cruel and

unusual punishment is triggered when a prisoner is subjected to a[n]

'unnecessary and wanton infliction of pain.'" Bennett v. Parker, 898 F.2d 1530,

1532 (11th Cir. 1990). In determining whether a prisoner has suffered

unnecessary and wanton pain, the core inquiry is "whether force was applied in

a good faith effort to maintain or restore discipline or maliciously and

---

[9]Like the inadequate medical treatment claim, a claim for an Eighth Amendment
violation is cognizable under 42 U.S.C. § 1983. Hale v. Tallapoosa Cnty., 50 F.3d 1579,
1582 (11th Cir. 1995).

sadistically for the very purpose of causing harm." Id. at 1532-33 (citation omitted). Factors to be considered in this inquiry are, "the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted upon the prisoner." Id. at 1533. Not "every malevolent touch by a prison guard" or "every push or shove" violates a prisoner's constitutional rights, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (citations omitted). Although alleged injuries need not be severe to support an excessive force claim, the failure to allege any injury indicates that the force was not so excessive as to violate the prohibition against an unnecessary and wanton infliction of pain. Id. at 10 (holding that "bruises, swelling, loosened teeth, and a cracked dental plate" do not show that force was de minimis); Oliver v. Falla, 258 F.3d 1277, 1282 (11th Cir. 2001) (citing Hudson and stating that in "an Eighth Amendment case, the plaintiff must show actual injury").

27

Plaintiff grounds his excessive force claim in two separate incidents. First, Plaintiff alleges that Defendants Underwood, Llanas, Moore, and Sanders violated his rights when Underwood and Moore instructed Llanas and Sanders to drag the Plaintiff by his arms when he was unable to walk to his cell due to illness. Am. Cmpl., Dkt. No. [25] at ¶¶ 32-33. However, Plaintiff has not alleged any discernable injury which resulted from this conduct. As he has not alleged an actual injury, Plaintiff's excessive force claim is **DISMISSED** against these Defendants. See Oliver, 258 F.3d at 1282 (requiring a plaintiff to show an "actual injury" in an Eighth Amendment case).

Plaintiff also asserts an excessive force claim against Defendants Ashley and Sturgill. In this incident, Plaintiff pleads that Defendant Sturgill "pulled Plaintiff by his left arm, twisted it behind his back and pushed Plaintiff down to the floor; in the process it caused one of Plaintiff's teeth to be chipped and another split." Am. Cmpl., Dkt. No. [25] at ¶ 41. He also plead that he blacked out, and when he awoke, he was handcuffed on the ground. Defendant Sturgill then picked him up by the handcuffs and "brought Plaintiff's arms forward of his head." In the process, Sturgill dislocated Plaintiff's right shoulder. Sturgill then carried the Plaintiff to his cell by his handcuffs and Defendant Ashley

AO 72A
(Rev.8/82)

assisted him by carrying the Plaintiff by the right leg. Id. at ¶¶ 42-44. The Court finds that this conduct plausibly alleges a claim against Defendant Sturgill but not against Defendant Ashley.

As to Sturgill, the Plaintiff pleads that he suffered a serious injury including broken teeth and dislocated shoulder as a result of Sturgill's conduct. The Plaintiff also plead that he was incapacitated due to seizures he had been experiencing and was not causing a disruption for the sake of disruption; Plaintiff could not walk. Therefore, Plaintiff has sufficiently plead that Sturgill did not need to exert the force which he inflicted on the Plaintiff and Plaintiff's claim will survive.

However, Plaintiff pleads that Defendant Ashley's sole impropriety was carrying him by his right leg to his cell, which was after the Plaintiff incurred his alleged injuries. As Ashley's sole impropriety was to help Sturgill carry the Plaintiff to his cell–and it is not alleged that this action caused him any additional injury–the Court finds that this is the *de minimis* injury which the Eighth Amendment does not regulate.

AO 72A
(Rev.8/82)

As a result of the foregoing, Plaintiff's excessive force claim is

**DISMISSED** against all Hall County Defendants except Defendant Sturgill.

### c. Right to Privacy

In his Opposition Brief, Plaintiff argues that his Fourteenth Amendment right to bodily privacy was violated when he was stripped and videotaped by prison guards. Dkt. No. [38] at 13. However, after a review of the Amended Complaint, Plaintiff did not plead such a count against the Defendants. Plaintiff may not amend his complaint through briefing. See <u>Thampi v. Manatee Cnty. Bd. of Comm'rs</u>, 384 Fed. App'x 983, 988 (11th Cir. 2010) (finding that a party may not amend his complaint through summary judgment briefing). Thus, the Court finds that Plaintiff has not plead a violation of his right to bodily privacy.

### d. O.C.G.A. §§ 42-4-4 and 42-4-5

The Hall County Defendants next move to dismiss Plaintiff's state-law claims under O.C.G.A. §§ 42-4-4 and 42-4-5, arguing that the Plaintiff did not provide specific allegations to support these violations outside of his more generalized claims. In his opposition, the Plaintiff failed to point this Court to

any allegations which support his claims under these statutes. As Plaintiff has not responded to the Defendants' contention, the Defendants' motion is deemed **UNOPPOSED** as to these claims. See L.R. 7.1(B), N.D. Ga. Therefore, the Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's O.C.G.A. §§ 42-4-4 and 42-4-5 claims.

### e. State-Law Battery

The Hall County Defendants next move to dismiss Plaintiff's state-law battery claim against Defendants Underwood, Moore, Llanas, Sanders, Sturgill, and Ashley. As an initial matter, Plaintiff did not oppose the Defendants' arguments that Underwood and Moore did not touch the Plaintiff and thus could not have committed a battery. See L.R. 7.1(B), N.D. Ga; Def.'s Br., Dkt. No. [31-1] at 20 n.4. Therefore, the Defendants' Motion to Dismiss is **GRANTED** as to the battery claims against Underwood and Moore.

However, beyond Defendants Underwood and Moore, the Hall County Defendants did not challenge the plausibility of the battery itself but have instead argued that the Defendants are entitled to official immunity. In Georgia,

AO 72A
(Rev.8/82)

> [t]he doctrine of official immunity, also known as qualified
> immunity, offers public officers and employees limited protection
> from suit in their personal capacity. Qualified immunity "protects
> individual public agents from personal liability for discretionary
> actions taken within the scope of their official authority, and done
> without wilfulness, malice, or corruption." Under Georgia law, a
> public officer or employee may be personally liable only for
> ministerial acts negligently performed or acts performed with
> malice or an intent to injure. The rationale for this immunity is to
> preserve the public employee's independence of action without fear
> of lawsuits and to prevent a review of his or her judgment in
> hindsight.

Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001).

In mounting their challenge, the Hall County Defendants argue that Plaintiff's intent allegations are insufficient as alleging that each "acted with the intent to injure Plaintiff" is conclusory and not enough to withstand a motion to dismiss. Def.'s Br., Dkt. No. [31-1] at 22. However, at the motion to dismiss stage, each well-pleaded allegation is taken as true, and, in pleading the *mens rea* of the Defendants, it is unclear what else the Plaintiff could plead as those facts are within the Defendants' sole possession. Therefore, the Hall County Defendants Motion to Dismiss [31] is denied as applied to Plaintiff's state-law battery claims against Defendants Llanas, Sanders, Sturgill, and Ashley.

AO 72A
(Rev.8/82)

**f. All claims against Defendant "Officer W"**

The Defendants finally move to dismiss all claims against Officer W, arguing that federal courts do not permit fictitious party practice. As Plaintiff does not respond to that argument, all claims against Officer W are **DISMISSED** as **UNOPPOSED**. <u>See</u> L.R. 7.1(B), N.D. Ga.

3. <u>Defendants Yger and Hulsey's Motion to Dismiss</u>

Defendants Yger and Hulsey next move to dismiss all claims against them. As an initial matter, Plaintiff concedes that any claims based upon O.C.G.A §§ 42-4-4 and 42-4-5 are not properly brought against them as they are not jailers. <u>See</u> Pl.'s Opp. to Hulsey, Dkt. No. [62] at 9 n.3; Pl.'s Opp. to Yger, Dkt. No. [63] at 6. Therefore, only Plaintiff's claim for inadequate medical treatment remains against them.

First, Defendant Hulsey and Yger argue that the incident in which they were both involved does not state a claim. In that occurrence, Plaintiff argues that he had a seizure in his cell, that the Defendants came to look at him, gave him nausea medication, and–even though it was obvious he needed a doctor–left him in his cell in his own excrement and urine.

However, the Court does not find that this incident warrants relief under the Eighth Amendment. Ultimately, Plaintiff contends that he should have been taken to the doctor and that the prescription of nausea medication was not sufficient. However, a mere simple difference in medical opinion between the prison's medical staff and the inmate as to diagnosis or course of treatment does not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (["i]t is well established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."); Herndon v. Whitworth, 924 F. Supp. 1171, 1174 (N.D. Ga. 1995) ("Mere negligence or even malpractice, however, is not sufficient to constitute an Eighth Amendment violation. . . . A mere difference in medical opinion also will not suffice.") (Ward, J.) (citation omitted). As well, the Plaintiff did not plead that any actual

AO 72A
(Rev.8/82)

injury resulted because he did not see a doctor. See Oliver, 258 F.3d at 1282

(citing Hudson and stating that in "an Eighth Amendment case, the plaintiff

must show actual injury"). Therefore, Defendant Hulsey's Motion to Dismiss

[47] is **GRANTED** and Defendant Yger's Motion to Dismiss [61] is

**GRANTED, in part**.

But Defendant Yger is not dismissed from this suit. Plaintiff has

additionally plead that Yger moved him from the infirmary because she

"needed the bed space" even though she knew he needed medical attention, and

he pleads that she did not provide him with a sling as instructed by Dr. Zoller.

Am. Cmpl. Dkt. No. [25] at ¶¶ 31,49. As seen previously, denying medical

treatment for non-medical reasons constitutes deliberate indifference under the

Eighth Amendment. See Bingham, 654 F.3d at 1176 ("A complete denial of

readily available treatment for a serious medical condition constitutes deliberate

indifference."). So does not acting upon doctor's orders. See Ancata, 769 F.2d

at 704 (11th Cir. 1985) ("Deliberate indifference to serious medical needs is

shown when prison officials have prevented an inmate from receiving

recommended treatment or when an inmate is denied access to medical

personnel capable of evaluating the need for treatment."). Because Plaintiff has

also plead that these events caused him substantial risk of additional harm, Plaintiff's Eighth Amendment inadequate medical treatment claim remains against Defendant Yger for these two alleged acts.

### 4. Punitive Damages and Attorneys Fees

Because punitive damages and attorneys fees claims are derivative, these claims are dismissed against Defendants "Officer W," Cronic, Bandy, Hulsey, Underwood, Seymore, Moore, Chase, Fountain, and Hightower as no other claims remain against them. See 42 U.S.C. § 1988(b) (requiring the plaintiff to be a prevailing party in order to recover attorneys fees on a § 1983 action); Mann, 588 F.3d at 1304 ("A punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.") (applying Georgia law); United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601, 602 (Ga. 1996) (A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim.").

AO 72A
(Rev.8/82)

**C. Conclusion**

The Hall County Defendants' Motion to Dismiss Plaintiff's Complaint [26] and the State Defendants' Motion to Dismiss [11] are **MOOT**. The County Defendants' Motion to Dismiss Plaintiff's Amended Complaint [31], the State Defendants' Motion to Strike the Amended Complaint, or in the Alternative, Motion to Dismiss Plaintiff's Amended Complaint [33], Plaintiff's Motion to Amend his Complaint [39], and Defendant Jody Yger's Motion to Dismiss [61] are **GRANTED, in part** and **DENIED, in part**. Defendant Kassie Hulsey's Motion to Dismiss [47] is **GRANTED**.

As a result of the foregoing, the following claims remain against the following defendants:

-§ 1983 Eighth Amendment inadequate medical treatment claim:
Defendants Lewis, Sittnick, Smallwood, Ellis, and Yger

-§ 1983 Eighth Amendment excessive force claim: Defendant Sturgill

-State-law battery: Defendants Llanas, Sanders, Sturgill, and Ashley

-Punitive Damages and Attorneys Fees: Defendants Lewis, Sittnick, Smallwood, Ellis, Yger, Llanas, Sanders, Sturgill, and Ashley

37

**SO ORDERED** this __22nd__ day of December, 2011.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)