**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

BRIAN O. LIPSCOMB,     :
           :
    Plaintiff,   :
           :
  v.        :  CIVIL ACTION NO.
           :  2:11-CV-00078-RWS
OFFICER CHRISTOPHER  :
LLANAS, OFFICER NICK  :
SANDERS, OFFICER PHILIP :
STURGILL, and OFFICER JEFF :
ASHLEY,       :
           :
    Defendants.  :

## ORDER

   This case is before the Court on Defendants' Motion for Summary

Judgment [126] and Plaintiff's Motion to Strike Declaration of Dr. Snehal C.

Dalal Under Penalty of Perjury [142].  After reviewing the record, the Court

enters the following Order.

**Background**

   This case arises out of events that occurred on March 27, 2009, while

Brian Lipscomb ("Plaintiff") was incarcerated at Hall County Jail.  The Parties

do not dispute that Plaintiff suffers from a seizure disorder.  On or about March

24, 2009, after suffering multiple seizures over several days, Plaintiff was

placed in the jail's medical infirmary.  (Defendants' Statement of Material Facts ("Def.s' SMF"), [126-1] ¶ 8.)  Around 3:30 a.m. on March 27, 2009, Plaintiff had another seizure and complained that he did not have use of his right arm and leg.  (Plaintiff's Responses to Defendants' Statement of Material Facts ("Pl.'s Resp. to Def.s' SMF"), [132] ¶ 9.)  However, around 10:00 a.m. that same day, medical personnel informed Plaintiff that he would be released from the infirmary.  (Def.s' SMF, [126-1] ¶ 10.)  Plaintiff refused to leave the infirmary, so Defendants Llanas and Sanders were commanded by their superior to take Plaintiff back to his cell.  (Id. ¶¶ 11-12.)

Llanas and Sanders picked Plaintiff up off of his bed, put his arms around their shoulders, and dragged him back to his cell.  (Pl.'s Resp. to Def.s' SMF, [132] ¶ 14.)  Plaintiff's weight rested entirely on the officers.  (Def.s' SMF, [126-1] ¶ 15.)  At one point, according to Sanders, Plaintiff went completely "deadweight," so the officers held onto Plaintiff's arms and grabbed his pants to drag him to his cell.  (Plaintiff's Statement of Additional Material Facts ("Pl.'s SAMF"), [133-1] ¶ 80.)  While the officers carried him, Plaintiff requested that Sanders slow down because Plaintiff was becoming dizzy, but Sanders did not respond.  (Def.s' SMF, [126-1] ¶ 16.)  The officers were being threatened by

2

inmates who thought Plaintiff had been beaten and they moved faster toward Plaintiff's cell to avoid a confrontation.  (Id. ¶¶ 18-19.)

Plaintiff says that he suffered a seizure while being escorted by Llanas and Sanders through the common area, causing him to urinate and defecate on himself.  (Pl.'s Resp. to Def.s' SMF, [132] ¶ 20.)  Llanas and Sanders dropped Plaintiff to the floor when he started urinating.  (Pl.'s SAMF, [133-1] ¶ 83.)  According to Plaintiff, he was unconscious by the time they reached his cell.  (Pl.'s Resp. to Def.s' SMF, [132] ¶ 21.)  Officer Cofield witnessed Llanas and Sanders put Plaintiff into his cell.  (Def.s' SMF, [126-1] ¶ 22.)  Cofield then informed officers on the next shift, including Defendants Sturgill and Ashley, that Plaintiff did not walk into his cell under his own power and that Plaintiff had suffered a seizure and vomited, and needed a new jumpsuit.  (Id. ¶¶ 22, 24.)

 Later that evening, inmates were permitted to exit their cells for a recreation period.  (Id. ¶ 28.)  Plaintiff's cell mate, Thomas Jefferson Lewis, carried Plaintiff out of their cell and placed him on a picnic table bench in the common area.  (Id. ¶ 29.)  Lewis testified that he kept trying to get the attention of Defendant Sturgill and other officers to help Plaintiff because Plaintiff was sick, but the officers were unresponsive.  (Pl.'s SAMF, [133-1] ¶ 98.)  He said,

AO 72A
(Rev.8/82)

"It was almost like they were tired of fooling with Brian.  He had been sick before."  (Id.)  After about an hour of recreation time, Sturgill, accompanied by Defendant Ashley and Officer Kock, entered the common area and told the inmates to return to their cells.  (Def.s' SMF, [126-1] Id. ¶ 31.)  The other inmates went back to their cells, but Plaintiff was left sitting on the bench.  (Id. ¶ 34.)

After the dormitory lights went out, Ashley, Sturgill and Kock surrounded Plaintiff and Sturgill commanded Plaintiff to get up and walk to his cell.  (Id. ¶ 35.)  Plaintiff told the officers that he could not walk and Ashley threatened to pepper spray Plaintiff if he did not cooperate.  (Id. ¶ 35.)  Again, Plaintiff told the officers that he could not walk, and noted to Sturgill that he had seen Lewis carry Plaintiff out of his cell to the bench.  (Id. ¶ 36.)

At this point, the Parties' and witnesses' description of events diverge.  In his deposition, Sturgill testified that after Plaintiff again refused to stand up, the officers placed him in handcuffs.  (Id. ¶ 37.)  Sturgill then placed his left hand under Plaintiff's left arm and his right hand on Plaintiff's handcuffs and lifted, and Plaintiff stood.  (Deposition of Philip R. Sturgill ("Sturgill Depo"), [133-20] at 22-23 of 34.)  Plaintiff took some small steps with Sturgill, but was

4

attempting to jerk free and kept stating that he was not going back to his cell. (Id. at 23 of 34.)  Then Plaintiff went limp and Sturgill eased him onto the floor. (Id. at 24-25 of 34.)  Plaintiff began screaming that he wanted the Sheriff and Captain Bandy to come down to the common area.  (Id. at 25 of 34.)  Sturgill testified that Plaintiff was then carried to his cell by Sturgill and Kock; specifically, Sturgill stated that he supported Plaintiff under Plaintiff's left arm and Kock carried Plaintiff's feet.  (Id.)  According to Sturgill, Ashley had no physical contact with Plaintiff.  (Id. at 25-26 of 34.)

Plaintiff testified in his deposition, however, that Sturgill yanked him off of the table "out of the blue," causing him to fall on the floor, chip his tooth, and be knocked unconscious.  (Pl.'s Resp. to Def.s' SMF, [132] ¶ 37.)  Plaintiff stated that he woke up on the floor and found that he was handcuffed and Kock had his knee in the center of Plaintiff's back.  (Id.)  Plaintiff asked to be picked up and Sturgill responded by grabbing the cuffs, pulling Plaintiff's arms back, and dislocating both of Plaintiff's shoulders.  (Id.)  Plaintiff testified that Sturgill pulled his arms so far back that they ended up over Plaintiff's head and in front of his face.  (Deposition of Plaintiff ("Pl. Depo"), [126-4] at 73 of 88: 2-25.)  Plaintiff was in pain and started yelling, but Sturgill pulled Plaintiff up

by the handcuffs while Ashley grabbed his right leg, and they dragged Plaintiff back to his cell in this manner.  (Pl.'s Resp. to Def.s' SMF, [132] ¶ 37.)

Plaintiff's cell mate, Lewis, also testified as to his recollection of the incident.  According to Lewis, after Plaintiff told the officers that he could not walk, "Sturgill got mad . . . [and] put the handcuffs on him and when [*sic*] he jerked him so hard, slammed him against the table . . . ."  (Pl.'s SAMF, [133-1] ¶ 104; Deposition of Thomas Jefferson Lewis, Jr. ("Lewis Depo"), [134-11] at 27.)  Lewis states that Sturgill pulled Plaintiff's handcuffs up toward his head, and that the officers "were dragging him with his hands behind and he started screaming."  (Lewis Depo, [134-11] at 28-29.)  When asked if the officers pulled the handcuffs all the way over Plaintiff's head, Lewis responded, "No, sir, they didn't get them all the way around, but they were pretty close."  (Id. at 29.)

Finally, Kock testified regarding his recollection of the events.  Kock recalls Plaintiff stating that he could not walk.  (Pl. SAMF, [133-1] ¶ 107.) Kock testified that Plaintiff voluntarily put his hands behind his back when the officers handcuffed him.  (Id.)  Kock maintains that he and Sturgill linked arms with Plaintiff and picked him up from the table and then they set Plaintiff down

6

on the floor in his cell to remove the handcuffs.  (Id.)  Kock denies that Sturgill ever lifted Plaintiff up by the handcuffs and claims that Ashley was not even present.  (Id.)  Ashley, for his part, testified that he does not remember these events, but recalls Plaintiff complaining about his shoulder and seeing Plaintiff in a sling some time after the incident.  (Deposition of Jeff Ashley, [133-4] at 16-19 of 47.)

After Plaintiff was put in his cell, Lieutenant Cleveland summoned medical personnel to take Plaintiff to the infirmary in a wheelchair.  (Def.s' SMF, [126-1] ¶ 41.)  The Parties dispute the reason for Plaintiff's transfer to the infirmary, Defendants claiming that it was to determine whether Plaintiff was able to walk, and Plaintiff claiming it was because he could not walk and was in pain from the injuries to his shoulder.  (Pl.'s SAMF, [133-1] ¶ 43.)  Jail medical records from the three days following these incidents indicate that Plaintiff complained of a cracked tooth, numbness, weakness, bruising, seizures, a spine injury, and vomiting, but refused medications and sick call.  (Def.s' SMF, [126-1] ¶¶ 45-47; Ellis Depo, Vol. 1, Ex. 26, [126-5] at 4-5 of 14; Ellis Depo, Vol. 2, Ex. 75, [126-8] at 4 of 4.)  The first mention of Plaintiff's alleged shoulder injury is on March 31, 2009, when Dr. Linwood Zoller examined Plaintiff and

instructed nurses to order an x-ray and a sling for Plaintiff's shoulder.  (Def.s'

SMF, [126-1] ¶ 48.)  An x-ray of Plaintiff's shoulder taken on April 1, 2009,

showed that there was no dislocation or bone or joint abnormality, and the

overall impression was "normal right shoulder."  (Id.; Ellis Depo, Vol. 1, Ex.

26, [126-5] at 14 of 14.)

On April 2, Plaintiff was released from the infirmary and put in an

isolation cell.  (Pl.'s SAMF, [133-1] ¶ 116.)  Later that day, Plaintiff felt that his

complaints were being ignored and in an attempt to get medical attention, he

stood on the toilet of his cell and tried to hit the sprinkler head with his shoe.

(Id. ¶ 117.)  He fell from the toilet to the floor and complained of back pain, but

a nurse found that Plaintiff had not suffered any injury.  (Id.)  On or about April

4, Plaintiff filed an Inmate Grievance Form regarding the March 27 incident.

(Id. ¶ 118.)  The form stated that Plaintiff was dragged by his arms because he

could not walk and that the officers injured his arm.  (Id.)

On or about April 8, Plaintiff filed a written request for medical attention,

complaining about damage to his arm and a broken tooth, and lack of follow-up

after the x-ray of his shoulder.  (Id. ¶ 119.)  On April 15 and April 20, Plaintiff

filed additional requests for medical attention regarding his shoulder.  (Id. ¶

122.)  On April 22, after being examined again by Dr. Zoller, Plaintiff received an MRI that detected a "subtle defect within the posterior lateral aspect of the humeral head suggesting a small Hill Sach's deformity associated with prior shoulder dislocation**."**  (Id. ¶ 126.)  Plaintiff also received an x-ray on April 22, which showed a normal shoulder.  (Id. ¶ 127.)  On May 7, 2009, Dr. Robert Marascalco, an orthopedic surgeon, diagnosed Plaintiff with an acute anterior dislocation in his shoulder.  (Def.s' SMF, [126-1] ¶ 59.)  On January 25, 2012, Dr. Vachtsevanos, an orthopedic surgery and Marascalco's partner, performed surgery on Plaintiff's right shoulder.  (Pl.'s SAMF, [133-1] ¶ 134.)

**Discussion**

## I.      Plaintiff's Motion to Strike

Plaintiff moves to strike the declaration of Dr. Snehal C. Dalal ("Dr. Dalal") [141], submitted with Defendants' reply brief in support of their motion for summary judgment, on grounds that (1) the declaration was not timely submitted under Rule 6(c)(2)[1] and, (2) it was not properly attested to by the declarant as required by 28 U.S.C. § 1746.[2]  Defendants counter that Dr. Dalal's

---

[1] Rule 6(c)(2) provides: Any affidavit supporting a motion must be served with the motion.

[2] Section 1746 provides:

declaration substantially satisfies the requirements of § 1746 and that the declaration was proper under Rule 6(c)(2) because it did not in any way harm or prejudice Plaintiff.  The Court agrees with Defendants.

Defendants concede that the declaration does not follow § 1746's language verbatim.  However, the declaration does provide that it was "executed under penalty of perjury."  Chief Judge Carnes, in <u>Tishcon Corp. v. Soundview Comm., Inc.</u>, No. 1:04-CV-524-JEC, 2005 WL 6038743, at *3 (N.D. Ga. Feb. 15, 2005), found the phrase "under penalty of perjury" sufficient

---

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

**(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

to satisfy § 1746.  She reasoned, "[b]y signing a statement under penalty of perjury, [the declarant] has signaled that he understands the legal significance of his statements and the potential for punishment if he lies."  Id. at *4.  This Court agrees with Judge Carnes and finds that the declaration substantially complies with § 1746.

The Court also finds that Plaintiff was not prejudiced by Defendants' late filing of the declaration.  They were already aware of the contents of the declaration because a "Narrative Report" from Dr. Dalal with the exact same content was filed with Defendants' Motion for Summary Judgment [126-10] and with Defendants' supplemental initial disclosures [118].  The purpose of Rule 6(c)(2) is to ensure "that the party opposing a motion for summary judgment be given sufficient time to respond to affidavits filed by the moving party, thereby avoiding any undue prejudice" and "trial by ambush."  Tishcon, 2005 WL 6038743, at *8.

Plaintiff was aware of Dr. Dalal's report on January 7, 2013.  He could have deposed Dr. Dalal, but chose not to.  The declaration did not cause unfair surprise or prejudice to Plaintiff.  Therefore, the Court **DENIES** Plaintiff's motion to strike.

11

## II.      Motion for Summary Judgment - Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all remaining claims: (1) 42 U.S.C. § 1983 against Defendant Sturgill for excessive use of force; (2) state-

13

law battery against all Defendants; and (3) punitive damages against all
Defendants.

>    A.      42 U.S.C. § 1983 - Defendant Sturgill

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to
be subjected, any citizen of the United States . . . to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress . . . ."  "[T]he treatment a prisoner receives in prison . . .
[is] subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511
U.S. 825, 832 (1994) (citation omitted).  An Eighth Amendment violation is
cognizable under 42 U.S.C. § 1983.  Hale v. Tallaposa Cnty., 50 F.3d 1579,
1582 (11th Cir. 1995). "The eighth amendment prohibition against cruel and
unusual punishment is triggered when a prisoner is subjected to a[n]
'unnecessary and wanton infliction of pain.'"  Bennett v. Parker, 898 F.2d 1530,
1532 (11th Cir. 1990).

In determining whether a prison guard's use of force is actionable, the
core inquiry is whether force was "applied in a good faith effort to maintain or

restore discipline or maliciously and sadistically for the very purpose of causing harm." Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (citations omitted). Factors to be considered in this inquiry are, "the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted upon the prisoner." Bennett, 898 F.2d at 1533. Courts also consider "the extent of the threat to the safety of staff and inmates . . . [and] any efforts made to temper the severity of the forceful response." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (citation omitted).

Not "every malevolent touch by a prison guard" or "every push or shove" violates a prisoner's constitutional rights, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (citations omitted). Although alleged injuries need not be severe to support an excessive force claim, the failure to allege any injury indicates that the force was not so excessive as to violate the prohibition against an unnecessary and wanton infliction of pain. Id. at 10.

Applying these legal standards to the record before it, the Court finds that genuine issues of material fact preclude granting Defendants' motion as to Plaintiff's § 1983 claim against Defendant Sturgill.  Viewing the evidence in a light most favorable to Plaintiff, as the Court must, and applying the <u>Bennett</u> and <u>Fennell</u> factors set forth above, the Court concludes that a reasonable trier of fact could find that Sturgill violated Plaintiff's constitutional rights.

First, the need for the application of force was minimal, according to Plaintiff's and Lewis's testimony.  They testified that Plaintiff could not walk on his own.  In fact, Defendants admit in their brief that the present case is distinguishable from cases in which inmates refuse to obey orders; here, Plaintiff maintains that he *could not* obey when the officers ordered him to stand and walk back to his cell.  (Defendants' Brief in Support of Motion for Summary Judgement ("Def.s' MSJ"), [126-2] at 5.)  Therefore, the need to impose order or discipline via use of force was negligible or nonexistent.

Second, the amount of force allegedly used was entirely out of proportion to the need for such action.  Although the Parties dispute how much force was applied, Plaintiff and Lewis testified that a substantial amount of force was used

to return Plaintiff to his cell.  They both claim that Plaintiff was screaming in

pain from the officers' actions.

The extent of the injury inflicted upon Plaintiff during the incident is also

disputed.  Plaintiff claims that both of his shoulders were dislocated, that his

tooth was chipped, and that he was knocked unconscious.  Defendants claim

that Plaintiff's shoulder dislocation was caused by a preexisting injury, which

Plaintiff denies.  Jail records do reflect that Plaintiff filed multiple requests for

medical attention following the incident, and that he was eventually diagnosed

with a shoulder defect associated with a prior dislocation.  Ultimately, Plaintiff

did need shoulder surgery to regain full functionality of his arm.

Fourth, there is no indication that there was any threat to the safety of

staff or inmates during the incident.  The record shows that all of the other

inmates were secured in their cells before the officers dealt with Plaintiff.

Further, the officers do not suggest that they were in any danger from Plaintiff

himself, who was claiming to be severely weakened from his earlier seizure and

unable to stand or walk without assistance.  And finally, according to Plaintiff's

and Lewis's accounts, Sturgill made no effort to temper the severity of the

forceful response.  Instead, they claim, Sturgill became frustrated and angry

17

with Plaintiff when he would not stand up and walk, and Sturgill proceeded to handcuff Plaintiff, slam him around, and then drag him screaming back to his cell.  In sum, a reasonable jury could conclude that Sturgill applied force with the purpose of harming Plaintiff, not in a good faith effort to maintain order or discipline.

Defendants also argue that Plaintiff has failed to present evidence that Sturgill and Ashley caused his shoulder injury and therefore his § 1983 claim fails as a matter of law.  (Def.s' MSJ, [126-2] at 23.)  Defendants assert, "the weight of medical evidence" indicates Plaintiff's shoulder injury did not result from Defendants' conduct on March 27, 2009, and, they claim, Plaintiff had a preexisting shoulder injury, which was noted in Hall County Jail intake records on August 7, 2008.  (Id.)  However, Plaintiff testified that prior to March 2009, he had not suffered any pain in his right shoulder.  (Pl.'s Depo, [133-14] at 6 of 89.)  He also swore that he had not suffered any injury to either of his shoulders prior to the incident in question, and that he never told anyone at Hall County Jail that he had a preexisting shoulder injury.  (Pl.'s Aff., [133-3] ¶¶ 4-5.)  Therefore, the Court finds that there is a genuine dispute regarding causation and a jury should evaluate the "weight of medical evidence" on this issue.

18

Finally, the Court recognizes Defendants' argument that Plaintiff's version of the facts should be ignored because his account is implausible, self-serving, and inconsistent with other witnesses' accounts.  (Def.s' MSJ, [126-2] at 7-10.)  However, the Court notes that Defendants' own depositions contain self-serving and inconsistent statements.  This is a classic case of "he said, he said," and at this stage, the Court will not weigh the credibility of the Parties or witnesses.  Hall v. Bennett, 447 Fed. App'x 921, 923-24 (11th Cir. 2011).  Therefore, Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff's § 1983 claim against Defendant Sturgill.

B.     State-Law Battery

1.     *Legal Standards*

In Georgia, "[a] person commits the offense of simple battery when he or she either: (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally causes physical harm to another."  O.C.G.A. § 15-5-23.  Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption."  Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001).  "A

19

discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Parrish v. Akins, 504 S.E.2d 276, 278 (Ga. Ct. App. 1998) (quotations and citations omitted).  A ministerial act, on the other hand, "is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Id. (quotations and citations omitted).

> ### 2.    *Defendant Sturgill*

Plaintiff argues that if his § 1983 claim against Sturgill survives summary judgment, then as a matter of law, his state-law battery claim against Sturgill must also survive.  (Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Resp."), [133] at 18.)  And "Defendants agree with plaintiff's assertion that the battery claim against Sturgill rises and falls with the outcome of the Eighth Amendment claim." (Defendants' Reply Brief ("Def.s' Reply"), [140] at 14.)  Having already concluded that there are genuine issues of material fact regarding whether Sturgill maliciously used force against Plaintiff with the

intent to cause harm, the Court agrees that Defendants' motion should be **DENIED** as to the battery claim against Sturgill.

### 3.   *Defendant Ashley*

According to Plaintiff, his only physical contact with Ashley occurred when Ashley picked up Plaintiff's right leg to help Sturgill carry him to his cell. Defendants argue that this *de minimis* touching does not rise to the level of battery, but even if it does, Ashley is entitled to official immunity.  (Def.s' MSJ, [126-2] at 21.)  Plaintiff responds that "Ashley's participation in the procedurally incorrect, needless, violent, and inhumane dragging of [Plaintiff] to his cell . . . was clearly done with malice and intent to harm."  (Pl.'s Resp., [133] at 23.)  The Court agrees with Defendants that even if Ashley touched Plaintiff in an "insulting" manner, he is entitled to official immunity.

First, the Court finds that Ashley and Sturgill were performing a discretionary act when they returned Plaintiff to his cell.  They were not acting on specific orders and they exercised their own judgment in determining how to handle Plaintiff and return him to his cell.  Therefore, Plaintiff must show that Ashley acted with actual malice or "deliberate intention to do wrong."  Selvy v. Morrison, 665 S.E.2d 401, 404 (Ga. Ct. App. 2008).  "A deliberate intention to

do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff[].” Id. at 405.  Plaintiff has not produced any evidence that Ashley intended to cause Plaintiff's injuries; in fact, as Defendants note, there is no allegation that Ashley harmed Plaintiff at all.  If anything, Ashley's support of Plaintiff's lower body alleviated the alleged pressure applied to his arms by Sturgill.  Therefore, Defendants' motion is **GRANTED** as to the battery claim against Ashley.

### 4.    *Defendants Llanas and Sanders*

Defendants argue, and the Court agrees, that Plaintiff has not produced any evidence that Llanas and Sanders committed battery.  According to Plaintiff, Llanas and Sanders picked him up from his hospital bed, put his arms around their shoulders, and supported his entire weight as they took him back to his cell.  The only alleged harm to Plaintiff was dizziness because the officers were moving quickly.  However, Plaintiff admits that other inmates were threatening Llanas and Sanders and they were moving quickly to avoid a confrontation.  Plaintiff also claims that the officers dropped him when he began urinating on himself, but does not allege that he suffered any harm from being dropped.

22

None of these facts – taken from Plaintiff's own account – show that Llanas and Sanders touched Plaintiff in an offensive or insulting way, or intentionally caused physical harm to Plaintiff.  Therefore, Defendants' motion is **GRANTED** as to the battery claim against Llanas and Sanders.

C.       Punitive Damages

In Georgia, punitive damages "may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  Plaintiff has not shown that the conduct of Defendants Ashley, Llanas, and Sanders meets this high bar.  However, Plaintiff may be entitled to punitive damages against Defendant Sturgill.  See Discussion Parts II.A. and II.B.2, supra; see also Smith v. Wade, 461 U.S. 30, 56 (1983) (Punitive damages may be assessed "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.") Therefore, Defendants' motion for

23

summary judgment on punitive damages is **GRANTED** as to Defendants

Ashley, Llanas, and Sanders, and **DENIED** as to Defendant Sturgill.


## Conclusion

Based on the foregoing, Plaintiff's Motion to Strike Declaration of Dr.

Snehal C. Dalal under Penalty of Perjury [142] is **DENIED** and Defendants'

Motion for Summary Judgment [126] is **GRANTED in part and DENIED in**

**part.**  Plaintiff's claims for state-law battery and punitive damages against

Defendants Ashley, Llanas and Sanders are dismissed.  Plaintiff's § 1983, state-

law battery, and punitive damages claims against Defendant Sturgill remain.

The remaining Parties shall file a proposed consolidated pretrial order within 30

days of the entry of this Order.

**SO ORDERED**, this   20th   day of September, 2013.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE


24